IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ricky Lafayette Murray, | ) | C. A. No. 0:07-3960-DCN-RSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| E. Richard Bazzle, | ) | |
| | ) | |
| Respondent. | ) | |

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner proceeding pro se is before the undersigned United States Magistrate Judge for a report and recommendation on the respondent's motion for summary judgment filed on March 4, 2008, and petitioner's motion for summary judgment filed on May 12, 2008. 28 U.S.C. § 636(b).

**PROCEDURAL HISTORY**

The Petitioner, Ricky Lafayette Murray, is presently confined in the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Greenville County Clerk of Court. The Petitioner was indicted at the January 1981 term of the Grand Jury for Greenville County for kidnapping (1981-GS-23-118), armed robbery (1981-GS-23-120), and conspiracy (1981-05-23-129). Weyman Dodson, Esquire, represented him. On April 13, 1981, the Petitioner pled guilty as indicted. He was sentenced by the

1

Honorable William H. Ballenger to life imprisonment for kidnapping, twenty-one (21) years for armed robbery, and five (5) years for conspiracy. The Petitioner did not appeal.

On June 12, 1981, the Petitioner waived presentment and pled guilty to the following charges: burglary (1980-GS-23-3286), two (2) counts of assault and battery with intent to kill (1980-GS-23-3287, -3289), pointing a firearm (1980-GS-23-3288) larceny and receiving stolen goods (1980-G5-23-3294) and housebreaking and larceny (1981-GS-23-0203). Weyman Dodson, Esquire, represented him again. The Petitioner was sentenced by the Honorable Frank Eppes to an aggregate term of twenty (20) years. (App. pp. 116-20; p. 124). The Petitioner did not appeal.

On April 20, 1992, after serving less than eleven (11) years of his life sentence, the Petitioner was paroled by the South Carolina Board of Probation, Parole, and Pardon Services (the Board). (App. p. 36).

The Petitioner was indicted at the August 1994 term of the Greenville County Grand Jury for possession of crack cocaine (1994-GS-23-4879), under his alias name, Michael T. Williams. (App. p. 16-18). The Petitioner was not represented by counsel. The Petitioner pled guilty on August 18, 1994, and was sentenced by the Honorable Frank Eppes to confinement for five (5) years, suspended with five (5) years probation.

On March 6, 2000, the Petitioner was charged with violating

several conditions of his parole. (App. p. 15; pp. 22-23). In particular, he was charged with violating the conditions of his parole in the following respects:

> Willfully failing to report on 6/1/97, 2/5/98, 11/1/98, 6/99, 7/99, 11/99, 1/6/00, and 2/8/00. Willfully making an untruthful report to the Agent on 2/22/00 in which he stated he had not been using any drugs, he then tested positive. Willfully failing to refrain from the use of illegal substances by admitting to using THC on 1/13/98 and testing positive for Cocaine on 2/22/00. By being found guilty and receiving a $231 fine for Disorderly conduct on 3/2/98. Willfully failing to notify his agent of arrest for Unauthorized Use of Vehicle on 7/1/99 by the Dallas Police Department and Breach of Trust on 7/23/99 by the Greenville County Sheriffs Office. Willfully failing to pay supervision by being in arrears $40 as of 3/6/00. Willfully failing to follow the advice and instructions of the supervising Agent agreed to in writing on 4/20/92 and continuation orders dated 8/20/97, 11/1/94, and 12/15/92.

(Parole Arrest Warrant Number W-23-00-0263; Violation Report issued May 3, 2000). App. p. 15.

On June 1, 2000, the Petitioner signed an acknowledgment of notice of his final parole violation hearing, which was scheduled for June 14, 2000. In the acknowledgment, it was noted "that I will be permitted to have attorneys, at my own expense, and witnesses appear in my behalf if I so desire and have the right to question any person making an allegation against me at this hearing." (App. p. 20). On June 14, 2000, the Petitioner appeared pro se at a parole violation hearing held before a three (3) member panel of the Board, pursuant to which his parole was

3

revoked. (App. pp. 1-13; p. 19).

The Petitioner filed an application for post-conviction relief (PCR) on December 21, 2000, (2000-CP-23-7501) and an amendment on May 16, 2001. (App. pp. 37-56). A hearing was convened on December 18, 2002, before the Honorable Larry R. Patterson. Judge Patterson, however, found PCR was not an appropriate remedy and signed an order of dismissal on September 15, 2003. (App. pp. 62-64). On appeal, the South Carolina Supreme Court reversed this order and remanded for an evidentiary hearing. Murray v. State, Op. No. 05-MO-026 (S.C. Sup. Ct. filed June 26, 2005). (App. pp. 66-67).

After the remand, a second hearing was convened at the Greenville County Courthouse on November 18, 2005. (App. pp. 68-103). The Petitioner was present and represented by Symmes Culbertson, Esquire. In his PCR application, the Petitioner alleged that he was being held in custody unlawfully for the following reasons:

> 1. Applicant's parole was unlawfully revoked.
>
> 2. Applicant's due process rights were violated in his probation revocation hearing.
>
> 3. Applicant's parole revocation hearing was in violation of the U.S. Constitution.

At the hearing, the Petitioner raised the following specific allegations:

> 1. The revocation was unlawful because the parole arrest warrant was issued by a parole

4

> officer rather than a "neutral and detached magistrate" in violation of the Fourth Amendment to the United State's Constitution.
>
> 2. The revocation was unlawful because it was based on frivolous allegations and insufficient evidence.
>
> 3. The revocation was unlawful because the Applicant was not afforded due process.
>
> 4. The revocation was unlawful because the Applicant was denied the right to counsel at the revocation hearing.

The Petitioner testified at the hearing. App. p. 75-97. The Honorable D. Garrison Hill denied relief in an order dated December 19, 2005. (App. pp. 104-11).

The Petitioner made an appeal to the South Carolina Supreme Court from the denial of state post-conviction relief. In the appeal, he was represented by Robert M. Pachak of the South Carolina Office of Appellate Defense. On August 31, 2006, he petitioned for a writ of certiorari raising the following question: "Whether petitioner's parole was revoked without the benefit of a valid waiver of counsel?" Petition, p. 2. The Respondents made a return on October 6, 2006. On June 20, 2007, the South Carolina Supreme Court denied the petition by letter order. The remittitur was issued on July 6, 2007. This action was filed on December 11, 2007.

The following exhibits from the PCR action have been made part of the record here:

> 1. Petition for Writ of Certiorari, Murray v.

5

State, dated August 31, 2006.

2. Return to Petition, dated October 6, 2006.

3. Murray v. State, Letter Order, S.C.S.Ct. June 20, 2007.

4. Remittitur Letter, July 6, 2007.

5. PCR Appeal App. p. 1-62

6. PCR Appeal App. p. 63-124

## HABEAS ALLEGATION

Petitioner raised one allegation in the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254:

> **Ground One**: Whether petitioner's parole was revoked without the benefit of a valid waiver of counsel?
>
> a. The allegations presented to the Board by the Petitioner's parole agent were complex and difficult to present to the Board without the benefit of counsel.

On March 5, 2008, the petitioner was provided a copy of the respondents' summary judgment motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On May 12, 2008, the petitioner filed a motion for summary judgment. After several extensions, the petitioner filed an opposition to the motion on July 17, 2008. Lastly, on December 24, 2008, Petitioner submitted copies of letters he wrote in 2006 seeking the original take recording of

his PCR hearing. Hence it appears consideration of the motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2007. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the majority with respect to this matter, Justice O'Connor stated that a state court's decision can be contrary to the

Supreme Court's precedent in two ways: first, "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law. Second, a state-court decision is also contrary to the Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. Id. at 1519.

Justice O'Connor further stated that "[t]he text of § 2254(d)(1) ... suggests that the state court's decision must be substantially different from the relevant precedent of the Court." Id. She added that a "state-court decision will also be contrary to the Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court precedent." Id. at 1519-20. Even if "the federal court considering the prisoner's habeas application might reach a different result applying" relevant Supreme Court precedent, so long as the state court applied the correct legal rule from Supreme Court cases, such a "run-of-the-mill" state court decision could not be deemed "contrary to" Supreme Court precedent. Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that a state court decision involves an unreasonable application of the Court's precedent if "the state

court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of the Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id.  Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 1522.  In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ...  The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of

9

the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## THE APPOINTMENT OF COUNSEL AT PAROLE REVOCATION HEARINGS

A challenge to the fairness of parole violation proceedings is cognizable in federal habeas. Under Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972), the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply. The parolee is entitled, however, to notice of the charges, to a preliminary hearing to determine whether there is probable cause to believe that he has committed acts that would constitute a violation of parole conditions, id. at 484-85, 92 S.Ct. 2593, and a full hearing at which he may present evidence, id. at 487-88, 92 S.Ct. 2593. A parolee who is indigent also has a right to counsel where he makes a request based on a colorable claim that he has not committed the alleged violation of the conditions or that there are substantial reasons which make revocation inappropriate. Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756 (1973).

Addressing the due process right to appointed counsel at parole revocation hearings, the Supreme Court has held:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation

> and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness-the touchstone of due process-will require that the State provide at its expense counsel for **indigent** probationers or parolees.

<u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 790 (1973)(emphasis added).

The <u>Gagnon</u> court indicated that counsel should generally be afforded to indigent parolees in two instances: where the alleged probation violations are contested; and where the violations are not contested, but the probationer claims that "there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." <u>Id</u>. at 790.

## DISCUSSION

A review of the record and relevant case law reveals that the respondent's motion should be granted and this petition be dismissed.

As an initial matter, it is uncontested that Petitioner has properly exhausted his claim in the state courts within the meaning of 28 U.S.C.§2254(b).

Here, the state courts did not unreasonably apply the precedent of the U.S. Supreme Court in <u>Gagnon</u> and <u>Morrissey</u> in denying state post-conviction relief on Petitioner's sole claim that counsel should have been appointed sua sponte by the Parole

Board prior to the 2000 revocation hearing. In denying relief on this claim in the state PCR action, Judge Hill concluded:

### 4. Right to Counsel

In <u>Gagnon v. Scarpelli,</u> 411 U.S. 778, 93 S. Ct. 1756 (1973), the United States Supreme Court held that counsel should be provided to <u>indigent</u> parolees in cases where, after being informed of his right to request counsel, the parolee makes such a request, based on a timely or colorable claim (1) denying the violations or (2) that there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. 411 U.S. at 790, 93 S. Ct. at 1764 (emphasis added).

This Court finds the Applicant has failed to carry his burden of proving a right to counsel in several respects. First, the testimony and evidence presented at the PCR hearing demonstrates the Applicant was not indigent. Rather, he was gainfully employed up until the date of the revocation hearing. Second, despite being informed of his right to counsel, the Applicant failed to make a request for an attorney or otherwise ask the Board for a continuance to give him additional time to retain counsel. Third, the Applicant has failed to carry his burden of proving he had a colorable claim that was difficult or complex to present. Instead, at the evidentiary hearing he easily articulated factual challenges to the parole violations in terms he could have used at the revocation hearing without the assistance of counsel. For all of these reasons, this allegation is denied and dismissed with prejudice.

App.p. 109-110

It cannot be said that this decision by the PCR judge was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Since the Petitioner was not

12

indigent, he failed to satisfy the criteria set forth in <u>Gagnon</u>, which is applicable to indigent parolees only. There is simply no evidence in the record that the Petitioner was indigent. On the contrary, he testified at the parole revocation hearing that he had been a truck driver for at least the last year. (App. p.9, lines 11-25). The Petitioner's wife testified at the revocation hearing that he financially supported their family. (App.p.7, lines 2-6). The Petitioner's PCR attorney admitted at the evidentiary hearing that the Petitioner was not indigent, but said "he was of limited financial means." (App. p.73, lines 8-11). Therefore, Petitioner was not an indigent parolee and <u>Gagnon</u> would not apply to him.

Further, when the Petitioner signed the acknowledgment of notice advising him of the parole revocation hearing, it clearly stated an attorney could represent him at his expense. (App. p.20). At no point either prior to or during the revocation hearing did the Petitioner protest that he did not have an attorney or that he needed counsel in order to proceed. Further, the Petitioner did not meet his burden under <u>Gagnon</u> to show that he needed an attorney in order to explain "complex or otherwise difficult to develop or present" reasons why he was wrongfully cited for parole violations. <u>Gagnon</u>, 411 U.S. at 790, 93 S. Ct. at 1764. On the contrary, the Petitioner was able to clearly articulate his position before the Board at the revocation

hearing. The Petitioner simply failed to meet this burden of proving that the state court, in denying post-conviction relief on his claim that he was wrongfully denied the right to counsel at his parole revocation hearing, unreasonably applied Supreme Court precedent in denying relief. He is not entitled to habeas relief.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondent's motion for summary judgment be granted, any other motions be denied, and this matter ended.

Respectfully Submitted,

*/s/ Robert S. Carr*

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

February 26, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).